PEOPLE v BRUNO

Docket No. 56373. Submitted January 14, 1982, at Lansing.—Decided
    April 23, 1982.

    Michael T. Bruno was convicted of armed robbery and felony-
    firearm in the Clinton Circuit Court, Randy L. Tahvonen, J.
    Defendant appealed his felony-firearm conviction, alleging in-
    sufficient evidence. *Held:*

        1. Defendant did not possess a firearm himself during the
    robbery. To convict a defendant of aiding and abetting the
    commission of felony-firearm, it must be established that the
    defendant procured, counselled, aided, or abetted and so as-
    sisted in obtaining the proscribed possession, or in retaining
    such possession otherwise obtained. The evidence was insuffi-
    cient to sustain his conviction.

        2. The Double Jeopardy Clause of the United States Constitu-
    tion precludes a second trial in a state court where a conviction
    in the first trial was reversed by the reviewing court solely for
    lack of sufficient evidence to sustain the verdict.

        Reversed and the sentence on the felony-firearm conviction va-
    cated.

1. CRIMINAL LAW — FELONY-FIREARM — AIDING AND ABETTING —
    POSSESSION.

    A conviction for aiding and abetting felony-firearm must be
    supported by evidence that the defendant procured, counselled,
    aided, or abetted and assisted in obtaining possession of the
    firearm or that the defendant so assisted in retaining such
    possession otherwise obtained (MCL 767.39; MSA 28.979).

2. CRIMINAL LAW — DUE PROCESS — SUFFICIENCY OF EVIDENCE —
    REASONABLE DOUBT.

    In determining whether a conviction was based on sufficient

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law §§ 167, 267.
    30 Am Jur 2d, Evidence § 1130.
    79 Am Jur 2d, Weapons and Firearms §§ 7, 8.
[2] 30 Am Jur 2d, Evidence §§ 1170-1172.
[3] 21 Am Jur 2d, Criminal Law § 309.

evidence, a court must consider whether there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt.

3. CRIMINAL LAW — NEW TRIAL — DOUBLE JEOPARDY.

The Double Jeopardy Clause of the United States Constitution precludes a second trial in a state court where a conviction in the first trial was reversed by the reviewing court solely for lack of sufficient evidence to sustain the verdict.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Jon Newman,* Prosecuting Attorney, and *Richard I. Dresser,* Assistant Prosecuting Attorney, for the people.

*Sperl, Gustafson & McDonald,* for defendant.

Before: D. E. HOLBROOK, JR., P.J., and J. H. GILLIS and C. J. HOEHN,* JJ.

PER CURIAM. On November 15, 1980, defendant was found guilty of armed robbery, MCL 750.529; MSA 28.797, and felony-firearm, MCL 750.227b; MSA 28.424(2), by the trial judge sitting without a jury. He was sentenced to a two-year term of imprisonment on the felony-firearm conviction and to a consecutive term of two to five years in prison for armed robbery. Defendant appeals the felony-firearm conviction only.

Defendant contends the evidence was legally insufficient to convict him of felony-firearm. The prosecution admits that defendant did not personally possess a firearm during the commission of the felony. Therefore, the conviction must stand, if at all, on an aider and abettor theory.

Under *People v Johnson,* 411 Mich 50; 303 NW2d 442 (1981), a conviction for aiding and abetting felony-firearm must be supported by evi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

dence that the defendant procured, counselled, aided, or abetted and assisted in obtaining possession of the firearm or that the defendant so assisted in retaining such possession otherwise obtained. *Johnson* applies to the instant case under the limited retroactive application which *Johnson* has been given. *People v Longwish,* 109 Mich App 15; 310 NW2d 893 (1981).

The test for determining if evidence is legally insufficient to support a conviction was announced in *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979). The prosecutor must introduce evidence from which a rational trier of fact could reasonably conclude that the defendant is guilty beyond a reasonable doubt.

The evidence presented by the prosecutor in the instant case showed that on Sunday, September 21, 1980, defendant saw a friend of his at a restaurant near downtown Detroit. Defendant had known this friend, Jack Simpson, for approximately four or five weeks. The two men struck up a conversation during which Simpson asked the defendant if he would drive Simpson and Murrel MacAllister to Alma, to visit MacAllister's wife and children. Defendant agreed despite having never met MacAllister before. He and Simpson picked up MacAllister in defendant's pickup truck and left for Alma at approximately 6 p.m.

MacAllister testified that before the three men left Detroit they stopped at a Min-A-Mart store where Simpson bought a roll of white adhesive tape. MacAllister also testified that unbeknownst to the defendant he had taken a sawed-off shotgun and Simpson brought a handgun on the trip to Alma. MacAllister explained that he brought the shotgun because he did not want to leave the expensive firearm in his motel room while he was away on the trip to Alma.

The three men arrived at Mrs. MacAllister's house in Alma at approximately 8:30 p.m. After being informed that Mrs. MacAllister did not live there and that the previous occupants had moved, the men left town. Rather than drive back to Detroit, they spent the night at a rest area between Alma and Ithaca. The three men left the rest area at about 10:30 or 11 a.m. the next morning.

The defendant and MacAllister both testified that after passing through St. Johns, MacAllister requested that the defendant stop at the Knob Hill Tavern for a six-pack of beer. MacAllister claimed that he first thought of robbing the tavern when the defendant drove past it and MacAllister noticed that the tavern parking lot was empty. MacAllister explained that after the defendant had parked the truck he (MacAllister) took his shotgun out of his suitcase, got out of the camper portion of the truck and asked Simpson to go into the tavern with him. MacAllister testified that he informed Simpson of his intention to rob the tavern on the way into the tavern.

After the two men entered the tavern and ordered a beer from the barmaid, Mary Ann Stahlmann, both men drew their firearms and Simpson informed Mrs. Stahlmann that she was being robbed. Simpson then proceeded to take some cash, a money box and a red money bag bearing the label Clinton National Bank & Trust. He wrapped the money in a cloth while MacAllister ripped the phones from the tavern walls. Mrs. Stahlmann was then bound with surgical tape, after which MacAllister wrapped his shotgun in his windbreaker, grabbed a bottle of whiskey, and the two men fled. Mrs. Stahlmann worked herself free from the tape within a short time and called the

police from a telephone located in the service station across the street from the tavern.

The defendant testified that he remained in the truck, oblivious to the robbery. After MacAllister and Simpson returned to the truck from the tavern, he drove southbound on US-27 until he ran out of gas a short distance from the tavern. Defendant claimed his gas gauge was broken. He thereupon took one or more of the gas cans he had in the back of his pickup truck and walked to a nearby filling station while MacAllister and Simpson waited at the truck. The defendant maintained that it was only after he returned to the truck with the gas and saw MacAllister and Simpson climbing out of a roadside ditch that he became suspicious about the robbery. After Simpson and MacAllister had gotten back into the truck, defendant noted that they both had firearms and that Simpson had returned from the ditch with an empty shotgun-shell box. It was at this point that he questioned the two men and was informed that Simpson and MacAllister had robbed the tavern. He was told to drive away, which he did.

The defendant was stopped by the police a short distance from where he ran out of gas and the three men were searched and arrested.

At trial, the prosecution maintained that defendant had acted as a lookout for the robbery as well as the driver of the getaway vehicle. The trial judge agreed, finding both MacAllister's and defendant's testimony unbelievable. With respect to the felony-firearm conviction the court found as follows:

"The defendant *was aware of the fact* that the firearms would be used in connection with the commission of the crime, that he *intended those firearms to be used,* that he *actively participated and assisted in the crime*

*involving their use* and that he is guilty, therefore of violating the provisions of the felony-firearm statute." (Emphasis supplied.)

Under *Johnson,* in order to convict defendant of felony-firearm, defendant must have assisted in obtaining or retaining possession of the firearm. That he was aware that a firearm would be used, intended that it be used, and actively participated in the crime involving its use is not sufficient. The facts presented here would not justify a rational trier of fact in reasonably concluding that defendant assisted in obtaining or retaining possession of the firearms. Therefore, defendant's conviction of felony-firearm must be reversed.

Where a reviewing court reverses a conviction because the evidence presented is legally insufficient to sustain the conviction, the Double Jeopardy Clause of the United States Constitution bars retrial. *Burks v United States,* 437 US 1, 18; 98 S Ct 2141; 57 L Ed 2d 1 (1978), *Greene v Massey,* 437 US 19, 25; 98 S Ct 2151; 57 L Ed 2d 15 (1978). See *People v Hampton, supra,* 386 (RYAN, J., *concurring in part and dissenting in part).*

Defendant's conviction of felony-firearm is reversed and his sentence thereunder is vacated.